**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| **ARMANDINO CAVALIERE,** | : | **Civil Action No. 26-1569 (GC) (TJB)** |
| **Plaintiff,** | : | |
| **v.** | : | |
| **ENTERPRISE LEASING COMPANY OF PHILADELPHIA, LLC, *et al.*,** | : | **MEMORANDUM OPINION** |
| **Defendants.** | : | |

**BONGIOVANNI, United States Magistrate Judge**

This matter comes before the Court upon Plaintiff Armandino Cavaliere's ("Plaintiff") Motion to Remand, Amend Complaint, and Award Plaintiff Costs and Actual Expenses ("Motion to Amend"). (Docket Entry No. 12.) Defendants Enterprise Leasing Company of Philadelphia, LLC ("Enterprise Leasing") and Enterprise Holdings, Inc. (collectively, "Defendants") oppose Plaintiff's motion. (Docket Entry No. 15.) The Court has fully reviewed and considered all arguments made in support of and in opposition to Plaintiff's motion. The Court considers Plaintiff's motion without oral argument pursuant to Federal Rule of Civil Procedure ("Rule") 78(b) and Local Civil Rule 78.1(b). For the reasons set forth more fully below, Plaintiff's Motion to Amend is **DENIED**.

## I. PROCEDURAL HISTORY[1]

On September 12, 2025, Plaintiff filed a Complaint in the Superior Court of New Jersey, Mercer Vicinage, bearing the case caption *Armandino Cavaliere v. Enterprise Leasing Company of Philadelphia, LLC, et al.*, Civil Action No. MER-L-2123-25 (the "State Court Action"). (Docket Entry No. 1 ¶ 1.) In the State Court Action, on December 11, 2025, Plaintiff filed a request for default to be entered against Defendants, which the Superior Court granted on December 12, 2025. (Docket Entry No. 12-7 at 1.) On January 29, 2026, the parties entered into a Consent Order vacating default as to both Defendants. (*Id.*) An Order vacating default and extending Defendants' time to answer was entered on February 9, 2026. (*Id.* at 2.) On February 17, 2026, Defendants removed the action from the Superior Court of New Jersey to the United States District Court for the District of New Jersey, maintaining that this Court has original jurisdiction over the State Court Action under 28 U.S.C. § 1332, diversity of citizenship. (Docket Entry No. 1 ¶ 4.)

On March 9, 2026, Plaintiff filed the instant Motion to Remand, Amend Complaint, and Award Plaintiff Costs and Actual Expenses. (Docket Entry No. 12.) On March 23, 2026, Defendants filed their opposition to Plaintiff's motion. (Docket Entry No. 15.) Plaintiff filed his reply on April 1, 2026, as well as a letter supplementing his motion. (Docket Entry Nos. 16, 17.) On April 5, 2026, Defendants filed a Motion for Leave to File a Sur-Reply, to which Plaintiff replied on April 6, 2026. (Docket Entry Nos. 18, 19.) On April 6, 2026, the Honorable Georgette Castner, U.S.D.J., entered an Order accepting Plaintiff's supplemental letter (Docket Entry No. 16), granting Defendants' request to file a sur-reply in the form of a letter brief (Docket Entry No.

---

[1] As the parties are familiar with the facts of this case, the Court will only recite the procedural and factual background relevant to Plaintiff's Motion to Amend.

18), and accepting Plaintiff's reply brief (Docket Entry No. 17) despite Defendants' request to strike the same as untimely. (Docket Entry No. 20.)

On July 9, 2026, Judge Castner entered an Order administratively terminating the portion of Plaintiff's motion seeking remand pending a disposition on Plaintiff's request for leave to amend his Complaint. (Docket Entry No. 21.) Plaintiff's request for leave to amend was referred to the undersigned and is now addressed herein. (*Id.*)

## II. FACTUAL BACKGROUND

This is an employment discrimination action. In his Complaint, Plaintiff alleges that he was subjected to discrimination and retaliation throughout the course of his employment with Enterprise Leasing in violation of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, *et seq.* ("NJLAD"). (Docket Entry No. 1-1, "Compl." ¶¶ 46-65.) According to Plaintiff, he "engaged in protected activities including raising safety concerns, objecting to unfair metrics, requesting fair pay and advancement, refusing to disclose vaccination status, escalating unfair scorecard practices, opposing coerced United Way donations, and supporting a trainee's racial discrimination complaint." (*Id.* ¶ 46.) Due to these actions, Defendants allegedly retaliated against Plaintiff "by blacklisting him, denying him promotions, forcing a retaliatory transfer, soliciting negative feedback, threatening retaliation, coercing donations, and ultimately terminating him under false pretenses." (*Id.* ¶¶ 47-48.) Additionally, Plaintiff claims that he was subjected to derogatory remarks and stereotypes based on his race, national origin, and religion. (*Id.* ¶¶ 49-53.) These remarks included being told that he was "not hood enough" and being called "Dino the Dego." (*Id.* ¶¶ 49-50.) Due to this discriminatory treatment, Plaintiff alleges that he was denied flagship promotions despite his superior qualifications, promotions that were repeatedly given to less qualified managers. (*Id.* ¶¶ 51-52.) Based on the foregoing allegations, among others, Plaintiff

also raises claims of associational discrimination, hostile work environment, and wrongful termination. (*Id.* ¶¶ 54-65.)

In his Motion to Amend, Plaintiff seeks leave to amend his Complaint to add Marty Reinhardt, his former manager, as a defendant to this action. (Docket Entry No. 12-1, "Pl.'s Br." at *14-*16.)[2] Plaintiff argues that Mr. Reinhardt is subject to aiding and abetting liability under NJLAD. (*Id.*) Specifically, Plaintiff alleges:

- Mr. Reinhardt repeatedly referred to Plaintiff using a national-origin slur ("Dino the Dego");
- Mr. Reinhardt solicited negative feedback about Plaintiff from a subordinate;
- Mr. Reinhardt failed to address a trainee's racial discrimination complaint that Plaintiff had supported;
- Mr. Reinhardt was aware of Plaintiff's protected activities, including Plaintiff's IVF-related circumstances and discrimination complaints raised by Plaintiff and on behalf of other employees;
- Mr. Reinhardt exercised disciplinary and supervisory authority directly involved in the events leading to Plaintiff's termination.

(*Id.* at *15; Docket Entry No. 16-2, "PFAC" ¶¶ 66-71.) Plaintiff's Proposed First Amended Complaint ("PFAC") incorporates the foregoing allegations. (PFAC ¶¶ 66-71.) Plaintiff's PFAC remains unchanged in all other respects. (*See generally id.*)

Defendants oppose Plaintiff's proposed amendment. Primarily, Defendants argue that Plaintiff's request for leave to amend should be denied because the purpose of the same is to defeat federal jurisdiction. (Docket Entry No. 15, "Defs.' Opp'n Br." at 14-22.) Notably, Mr. Reinhardt is an individual that resides in Pennsylvania, the state in which Plaintiff resides, making him a

[2] As it relates to the parties' filings, the Court notes that all page citations that are preceded by an asterisk refer to the page numbers listed atop of the CM/ECF header. Page citations not preceded by an asterisk refer to the page numbers listed in the footer and/or header of the document.

proposed nondiverse defendant. (PFAC ¶¶ 1, 4.) Defendants also argue that Plaintiff's proposed amendment is futile, further necessitating denial of his request to amend. (Defs.' Opp'n Br. at 22-24.)

In rejoinder, Plaintiff challenges Defendants' contention that the purpose of his proposed amendment is to destroy diversity and defeat federal jurisdiction. (Docket Entry No. 17, "Pl.'s Reply Br." at *5-*6.) Rather, Plaintiff maintains that he has a substantive claim against Mr. Reinhardt that he wishes to prosecute and that joinder of Mr. Reinhardt is independently warranted. (*Id.* at *5.)

The Court now addresses Plaintiff's request for leave to amend and determines whether he should be permitted to file his PFAC.

## III. LEGAL STANDARD

Pursuant to Rule 15(a)(2), leave to amend pleadings is generally granted freely. *See Foman v. Davis,* 371 U.S. 178, 182 (1962); *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000). However, "[i]f after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." 28 U.S.C. § 1447(e). "Once jurisdiction has vested in a federal court—which it did here upon removal from state court—careful scrutiny should be applied to any post-removal events threatening to wrench that jurisdiction away." *Avenatti v. Fox News Network LLC*, 41 F.4th 125, 133 (3d Cir. 2022) (citation omitted). In essence, "a court must scrutinize motions to amend more carefully where a plaintiff seeks to join a non-diverse party, and as a result, deprive a federal court of subject matter jurisdiction." *City of Perth Amboy v. Safeco Ins. Co. of Am.*, 539 F. Supp. 2d 742, 746 (D.N.J. 2008).

When analyzing a motion under 28 U.S.C. § 1447(e), courts in the Third Circuit have adopted and applied the factors delineated by the United States Court of Appeals for the Fifth Circuit in *Hensgens v. Deere & Co.*, 833 F.2d 1179 (5th Cir. 1987). *City of Perth Amboy*, 539 F. Supp. 2d at 746. The four *Hensgens* factors include: "(1) whether the purpose of the plaintiff's motion is to defeat [federal] jurisdiction; (2) whether the plaintiff was dilatory in seeking to amend his complaint; (3) whether the plaintiff will be prejudiced if the motion is not granted; and (4) any other equitable factors." *Id.* (citing *Hensgens*, 833 F.2d at 1182). "The Court has substantial discretion to decide whether to allow joinder of a diversity-destroying defendant." *Acerra v. Whirlpool Corp.*, Civ. No. 09-5402, 2010 WL 1265198, at *1 (D.N.J. Mar. 26, 2010) (internal quotation marks and citations omitted).

## IV. <u>DISCUSSION</u>

The Court addresses each *Hensgens* factor in turn along with the parties' respective arguments.

### *A. Whether the Purpose of the Plaintiff's Motion Is to Defeat Diversity Jurisdiction*

Plaintiff maintains that the purpose of his amendment is not solely to defeat federal jurisdiction. (Pl.'s Br. at *15.) He argues that Mr. Reinhardt is a direct participant in the alleged discrimination and stresses that his intent to add Mr. Reinhardt as a defendant pre-dates Defendants filing for removal on February 17, 2026. (*Id.*) Plaintiff stresses that he has an independent basis to seek joinder—i.e., a viable NJLAD claim against Mr. Reinhardt—and that liberality is warranted due to his *pro se* status. (Pl.'s Reply Br. at *5-*6.)

Defendants dispute Plaintiff's intent. According to Defendants, Plaintiff was fully aware of Mr. Reinhardt, including the associated allegations, "when he filed his initial complaint in September 2025, and even when he filed his complaint with the Pennsylvania Human Rights

Commission ('PHRC') and identified Mr. Reinhardt in that complaint in July of 2024."[3] (Defs.' Opp'n Br. at 14-15.) Defendants argue that Plaintiff raises no new facts in support of seeking his amendment and simply replaces any reference to "manager" with Mr. Reinhardt's name.[4] (*Id.* at 15.) To the extent that Plaintiff raises newly proposed allegations related to Mr. Reinhardt, Defendants contend that the same mirror the allegations about Mr. Reinhardt raised by Plaintiff in his EEOC Charge. (Docket Entry No. 18, "Defs.' Sur-Reply Br." at 3.) In sum, Defendants maintain:

> The timing of Plaintiff's motion to amend, three weeks after removal, **<u>six months</u>** since filing his initial Complaint, and **<u>14 months</u>** since filing his complaint with the PHRC wherein he specifically mentioned Mr. Reinhardt, and the fact that he raises no new information in his request to amend, underscores his improper attempt to forum shop and deprive this court of its jurisdiction over this case.

(Defs.' Opp'n Br. at 18 (emphasis in original).)[5]

Based on the record presented, the Court finds that the facts strongly indicate that Plaintiff's primary purpose in seeking amendment is to defeat federal jurisdiction and induce remand.

The timing of Plaintiff's Motion to Amend is highly suspect. Plaintiff's PFAC raises no new factual allegations. Rather, the allegations raised in Plaintiff's initial Complaint are recast in his PFAC, simply specifying Mr. Reinhardt as a perpetrator of the alleged discriminatory conduct. (*Compare* Compl. ¶¶ 46-65, *with* PFAC ¶¶ 66-71.) To this end, irrespective of the viability of his

---

[3] Plaintiff's charge, or complaint, with the PHRC was dually filed with the Equal Opportunity Employment Commission ("EEOC" and, together with the PHRC, the "Commissions"). (Defs.' Opp'n Br. at 3.)

[4] The Court recognizes that Defendants were not in possession of Plaintiff's PFAC when they filed their opposition papers.

[5] As Plaintiff's PHRC and EEOC complaint was filed in July 2024, the timing of Plaintiff's Motion to Amend, by the Court's estimation, is approximately twenty months, rather than fourteen months, since he filed his complaint with the Commissions. (*See* Ex. 1 to Tinneny Decl., Docket Entry No. 15-1 (EEOC Form 5 bearing signature date of July 9, 2024).)

proposed claim, Plaintiff undoubtedly knew of Mr. Reinhardt's identity, including his alleged conduct, well prior to seeking amendment. As Defendants highlight, Plaintiff's proposed allegations against Mr. Reinhardt mirror the allegations raised in his EEOC Charge filed on July 9, 2024, in which he specifically references Mr. Reinhardt by name. (Ex. 1 to Tinneny Decl., Docket Entry No. 15-1; Defs.' Sur-Reply Br. at 3.) Notably, Plaintiff does not dispute that he had knowledge of Mr. Reinhardt's identity and alleged conduct in July 2024 or before he filed suit in September 2025. (*See generally* Pl.'s Br. at *15-*16; Pl.'s Reply Br. at *5-*6.) In fact, in an email to his prior counsel, Plaintiff acknowledges that he had prior knowledge of Mr. Reinhardt's alleged discriminatory actions. Specifically, Plaintiff conveyed to his prior counsel:

> Marty was my Area Manager at the time of my termination. He supervised my branch, had disciplinary authority, and was aware of my protected activity (including IVF-related circumstances and discrimination issues raised by [employee]). To my knowledge, he did not address [employee's] discrimination email, and around that time he also asked [employee] what he thought about me, which may relate to subsequent scrutiny and discipline. Additionally, Marty was one of the managers who repeatedly referred to me using a national-origin slur ("Dino the Dego") during my employment.

(Docket Entry No. 12-12, "Pl.'s Email of 02/12/2026.") It is evident that Plaintiff possessed knowledge of the underlying allegations against Mr. Reinhardt that form the basis of his proposed NJLAD claim long before removal and, indeed, even prior to him filing suit. Though Plaintiff emphasizes that his initial Complaint contemplated adding parties by naming "John Doe Managers 1–10" as fictitious defendants (Pl.'s Reply Br. at *6), this is not a case where Mr. Reinhardt's identity was previously unknown to Plaintiff or where Plaintiff was unaware of Mr. Reinhardt's alleged conduct. Such an argument is therefore unavailing. *See Albino v. Home Depot*, Civ. No. 20-2626, 2020 WL 2932946, at *4 (D.N.J. June 3, 2020) ("[I]f a plaintiff knows of a defendant's activities but chooses not to include him, courts will deny the late attempt to join, viewing the late

addition as nothing more than an attempt to destroy diversity." (internal quotation marks and citation omitted)).

Despite possessing prior knowledge of his proposed allegations, Plaintiff argues that he was unaware of N.J.S.A. 10:5-12(e), which is why he did not seek to add Mr. Reinhardt as a defendant sooner. (Pl.'s Reply Br. at *5-*6.) The Court is unpersuaded by Plaintiff's argument. In his email to his prior counsel, Plaintiff provided additional facts about Mr. Reinhardt as a "follow-up" to a "discussion regarding possible removal." (Pl.'s Email of 02/12/2026.) Plaintiff concluded his email by stating, "Given [Mr. Reinhardt's] supervisory authority, knowledge, and conduct, do we have a viable aiding-and-abetting claim under N.J.S.A. 10:5-12(e)? If so, I understand that would also affect complete diversity under 28 U.S.C. § 1332." (*Id.*) Plaintiff explicitly contemplated adding Mr. Reinhardt as a defendant in response to Defendants possibly removing the action to federal court and in the context of "affecting complete diversity." Then, it was only after removal that Plaintiff sought leave to amend his Complaint to add Mr. Reinhardt, a nondiverse party, as a defendant. In the Court's view, the record bears all the earmarks of Plaintiff now seeking amendment with diversity-destroying intent.

For the foregoing reasons, the Court finds that Plaintiff's primary purpose in seeking to join Mr. Reinhardt now is to destroy diversity jurisdiction and remand this action to state court. The first *Hensgens* factor strongly weighs against granting Plaintiff leave to amend. The Court notes that this factor has been described by some sister courts as the most important factor of the *Hensgens* analysis. *See, e.g.*, *City of Cleveland v. Deutsche Bank Tr. Co.*, 571 F. Supp. 2d 807, 823 (N.D. Ohio 2008) ("Of the relevant factors, the first appears to be of paramount importance" (collecting cases)); *Flores v. Arch Ins. Co.*, Civ. No. 15-299, 2015 WL 4430866, at *2 (W.D. Tex. July 17, 2015) ("The first *Hensgens* factor has been described as the 'most important' factor of the

four."); *Diaz v. Quantem Aviation Servs., LLC*, Civ. No. 23-1975, 2024 WL 1607066, at *1 (N.D. Tex. Apr. 11, 2024) (same); *Mooring v. Wal-Mart Transportation, LLC*, Civ. No. 25-4852, 2026 WL 821199, at *2 (S.D. Tex. Mar. 25, 2026) (same). Even so, the Court addresses the remaining *Hensgens* factors and weighs the same as it finds appropriate.

*B. Whether the Plaintiff Was Dilatory in Seeking to Amend His Complaint*

"Dilatory conduct under this factor takes into consideration the length of time as well as the nature of the delay." *City of Perth Amboy*, 539 F. Supp. 2d at 748. As mentioned, Plaintiff possessed full knowledge of the underlying factual allegations against Mr. Reinhardt that form the basis of his proposed NJLAD claim long before removal and prior to him filing suit. This is undisputed. Despite his knowledge, he waited six months after filing his initial Complaint, and until removal, to move to amend his pleading. Contrary to Plaintiff's position, this was not the earliest opportunity for him to seek to add Mr. Reinhardt to the action. (Pl.'s Br. at *16.) The only explanation proffered by Plaintiff for such a long delay is that he was unaware of N.J.S.A. 10:5-12(e). However, for the reasons stated above, the Court is unconvinced by this argument. (*See supra* Section IV(A).)

Moreover, while Plaintiff stresses that he is proceeding *pro se* and is not a lawyer, it is not lost on the Court that he was represented by an attorney prior to and until removal. The record indicates that counsel filed a Notice of Appearance on behalf of Plaintiff in the State Court Action on December 11, 2025. (*See* Docket Entry No. 12-7 (Transaction ID: LCV20253482861).) Defendants filed their Notice of Removal on February 17, 2026, approximately sixty-eight days after Plaintiff's counsel filed a Notice of Appearance. Even under the most liberal interpretation of the record, the Court is hard-pressed to conclude that Plaintiff lacked the necessary time, factual knowledge, and legal guidance to seek amendment of his Complaint significantly earlier and

before removal. In sum, Plaintiff offers no credible reason for his delay in seeking leave to amend his Complaint to add Mr. Reinhardt as a defendant—a delay that, by all accounts, was unduly lengthy. *See Albino*, 2020 WL 2932946, at *5 (finding that a delay of "less than forty days" since the filing of the initial complaint was dilatory, where no credible reason for the delay was provided); *Milko v. Int'l Flavors & Fragrances, Inc.*, Civ. No. 15-8291, 2016 WL 8709998, at *7 (D.N.J. July 29, 2016) (finding that a delay of "nearly two months after filing the original [c]omplaint" was dilatory, where no credible explanation for the delay was provided).

The Court therefore finds that Plaintiff was dilatory in seeking amendment. The second *Hensgens* factor weighs against granting Plaintiff leave to amend.

*C. Whether the Plaintiff Will Be Prejudiced If the Motion Is Not Granted*

Under the third *Hensgens* factor, the Court considers whether Plaintiff would be "significantly injured" if leave to amend is denied. *Avenatti*, 41 F.4th at 129; *see also Salamone v. Carter's Retail, Inc.*, Civ. No. 09-5856, 2010 WL 762192, at *2 (D.N.J. Mar. 5, 2010) ("The third *Hensgens* factor is whether the denial of plaintiff's request for an amendment will significantly injure her.").

Plaintiff argues that he "will be significantly injured if joinder is denied because he would lose the ability to pursue claims against a supervisor who personally participated in the discrimination." (Pl.'s Br. at *16.) However, in a separate vein, Plaintiff contends that he will be prejudiced if leave to amend is denied, as he would be forced "to maintain two separate actions involving the same facts in two forums." (Pl.'s Reply Br. at *6.) Specifically, Plaintiff asserts that denying amendment here would create an inefficient and prejudicial result: he would be forced to litigate his NJLAD claims against Defendants in federal court while pursuing an aiding and abetting claim against Mr. Reinhardt in state court. (*Id.*)

Defendants argue that Plaintiff's claim of prejudice is overstated. (Defs.' Opp'n Br. at 20-21.) Defendants maintain that Plaintiff will suffer no discernable prejudice if leave to amend is denied, as he may obtain full relief from Defendants if he is able to prevail against the same and regardless of whether he raises an aiding and abetting claim against Mr. Reinhardt. (*Id.* at 21 (citing *Petricorena v. Walmart Inc.*, Civ. No. 24-10965, 2025 WL 2650574, at *5 (D.N.J. Sept. 16, 2025)).)

The Court finds that Plaintiff will not be significantly injured or prejudiced by the denial of his amendment. Plaintiff is correct in that courts in this jurisdiction have, in certain instances, found that requiring a plaintiff to litigate in two forums to pursue colorable claims would be prejudicial. *See, e.g.*, *Pepitone v. Target Corp.*, Civ. No. 24-236, 2024 WL 3823002, at *4 (D.N.J. Aug. 14, 2024); *Knox v. Walmart, Inc.*, Civ. No. 24-9447, 2025 WL 1952647, at *4 (D.N.J. July 15, 2025); *Chaykowsky v. Bristol-Myers Squibb Co.*, Civ. No. 25-1907, 2026 WL 540464, at *11 (D.N.J. Feb. 26, 2026). Indeed, "there is some prejudice to Plaintiff, in the form of increased costs and potential for inconsistent rulings, that results if the amendment is not allowed." *City of Perth Amboy*, 539 F. Supp. 2d at 749. However, while the prospect of prosecuting dual actions in two separate forums militates in favor of finding prejudice, such a fact is not dispositive on the question of whether a plaintiff will be significantly injured if amendment is denied. In fact, the *Hensgens* court recognized as much, stating:

> We are confronted with competing interests. On one hand, there is the danger of parallel federal/state proceedings with the inherent dangers of inconsistent results and the waste of judicial resources. On the other side, the diverse defendant has an interest in retaining the federal forum. Indeed, the removal statutes are predicated on giving the diverse defendants a choice of a state or federal forum. We conclude that the balancing of these competing interests is not served by a rigid distinction of whether the proposed added party is an indispensable or permissive party. Instead, the district court, when confronted with an amendment to add a nondiverse

> nonindispensable party, should use its discretion in deciding whether to allow that party to be added.

*Hensgens*, 833 F.2d at 1182 (citations omitted).

As the *Hensgens* court made clear, the "danger of parallel federal/state proceedings with the inherent dangers of inconsistent results and the waste of judicial resources" is always a potential reality when considering whether to deny joinder of a nondiverse party. As such, the Court must evaluate whether the danger of parallel proceedings is sufficiently significant to take precedence over the diverse defendants' choice of forum. Here, the Court finds that it is not. As Defendants argue, the prospective injury to Plaintiff from having to litigate parallel proceedings is mitigated. Similar to the plaintiff's claims in *Petricorena*, Plaintiff's existing NJLAD claims allow him to obtain full relief for any damages from Defendants, regardless of whether he also asserts an NJLAD aiding and abetting claim against Mr. Reinhardt. *Petricorena*, 2025 WL 2650574, at *5. Moreover, Plaintiff may also pursue discovery from Mr. Reinhardt in this action pursuant to the Federal Rules of Civil Procedure, whether Mr. Reinhardt is a party or not. *Id.*

Hence, while Plaintiff may suffer some prejudice if amendment is denied, the Court does not find that the prejudice amounts to a "significant injury" that supersedes Defendants' interest in retaining the federal forum. The third *Hensgens* factor thus weighs against granting leave to amend.

*D. Any Other Equitable Factors*

Lastly, the Court considers any other factors bearing on the equities. Plaintiff emphasizes that judicial economy favors adjudicating all claims in one forum. (Pl.'s Br. at *16.) In rejoinder, Defendants draw particular attention to Plaintiff's prior knowledge of his proposed amendment, as well as to his dilatoriness and suspicious timing in seeking amendment. (Defs.' Opp'n Br. at

21-22.) Ultimately, under the current record, the Court deems the following facts to be of particular significance:

- Plaintiff clearly had full prior knowledge of his proposed amendment, including all associated allegations, prior to removal and prior to filing suit;
- Despite his knowledge, Plaintiff elected not to name Mr. Reinhardt in his initial Complaint;
- Despite retaining legal counsel in the State Court Action, Plaintiff chose not to move to amend his Complaint until soon after removal; and
- In considering whether to pursue amendment of his Complaint, Plaintiff explicitly contemplated affecting diversity jurisdiction.

Bearing in mind this full context, the Court holds that the equities favor denial of the amendment, as the record strongly indicates that amendment is being pursued to destroy federal jurisdiction after removal.

Accordingly, the Court finds that the four *Hensgens* factors, on balance, weigh against granting leave to amend. Plaintiff's request for leave to amend his Complaint is therefore **DENIED**. Given this finding, the Court refrains from addressing the parties' arguments related to Rule 15(a)(2) and Rule 15(c).

## V. CONCLUSION

For the reasons set forth above, Plaintiff's Motion to Amend is **DENIED**. An appropriate Order follows.

Dated: October 29, 2026

s/ Tonianne J. Bongiovanni
**HONORABLE TONIANNE J. BONGIOVANNI**
**UNITED STATES MAGISTRATE JUDGE**